**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JONNATTHAN CANAS GIRALDO and JULIAN CANAS DIAZ,** <br>          **Petitioners,** <br><br>      **v.** <br><br> **J.L. JAMISON, BRIAN MCSHANE, MARKWAYNE MULLIN, TODD BLANCHE,** <br>          **Respondents.** | **CIVIL ACTION** <br><br><br> **NO.  26-3516** |

**HODGE, J.**                                                                                          **June 1, 2026**

<u>**MEMORANDUM**</u>

Petitioners Jonnatthan Canas Giraldo and Julian Canas Diaz ("Petitioners") are two of the numerous individuals who, pursuant to the new decision by the Bureau of Immigration Appeals ("BIA"), have been subjected to mandatory detention without the opportunity for an individualized hearing under the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225(b)(2). BIA's interpretation of that section would permit it to treat an immigrant who was not inspected upon arrival in the country "as seeking admission" even if the person arrived in the country years ago. Such treatment results in detention without any hearing. This Court again joins with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Canas Giraldo's and Mr. Canas Diaz's petition for a writ of habeas corpus (ECF No. 1) and orders their immediate release.[1]

---

[1] The Court may decide the issues raised in the Petition without a hearing, as the Government has requested here and as courts have done in similar recent cases. *See Rodriguez Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025).

## I.    PROCEDURAL BACKGROUND[2]

Mr. Canas Giraldo and his son, Mr. Canas Diaz, are both Colombian nationals. (ECF No. 1 ¶¶ 27-28.) They entered the United States through Mexico with Mr. Canas Giraldo's spouse, Vivian Diaz Gaviria, and his other son, Zharick Canas Diaz, without inspection on March 20, 2023. (*Id.* ¶¶ 1-2; ECF No. 4 at 4.) Since then, the family has resided together in Philadelphia, Pennsylvania. (ECF No. 1 ¶ 3.) On October 3, 2022, Mr. Canas Giraldo filed a timely Application for Asylum (I-589) with United States Citizenship and Immigration Service ("USCIS"), which remains pending. (*Id.* ¶ 4.) Mr. Canas Diaz is a derivative beneficiary of Mr. Canas Giraldo's I-589, as are Vivian and Zharick. (*Id.* ¶ 5.) Both Petitioners are authorized to work legally in the United States, are gainfully employed, file their taxes, and help financially support their families. (*Id.* ¶ 6.) Neither Petitioner has a criminal history. (*Id.* ¶ 7.)

On May 22, 2026, Respondents detained both Petitioners when they appeared for their regularly scheduled Immigration and Customs Enforcement ("ICE") check-in appointment at the Philadelphia Field Office. (*Id.* ¶ 8.) Petitioners are currently detained in Philadelphia at the Federal Detention Center. (*Id.* ¶ 29.)

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## III.    DISCUSSION

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

2

Respondents assert that the Petition should be denied because Petitioners are lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and their detention does not violate constitutional due process. (ECF No. 4.)

**A. Petitioners Are Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2)(A)**

Section 1225(b)(2)A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, the Department of Homeland Security ("DHS") issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. (ECF No. 2-1 at 2.) This policy was subsequently enshrined in a September 5, 2025 decision by the Board of Immigration Appeals ("BIA"), which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (B.I.A. 2025).

3

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289 (emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. If the Court accepts the Government's current interpretation of Section 1225(b)(2)(A) as applying to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court. I therefore follow the decisions of my colleagues and hold that Section 1225(b)(2)(A) cannot apply to Petitioners, since they were already present in the United States when they were detained. *See, e.g.*, *Patel v. McShane*, 25-cv-5975 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Demirel*, 2025 WL 3218243 (Diamond, J.); *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *3–4 (E.D. Pa. Nov. 14, 2025); (Wolson, J.); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (Kenney, J.).

Respondents assert that the present case is a "*Q. Li*" case, referring to the BIA decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), which they define as those cases in which "individuals who entered the United States without inspection, were encountered near the border and detained without a warrant, released into the country, and, after a passage of time, [were]

recently detained under 8 U.S.C. § 1225(b)(2)(A)." (ECF No. 4 at 2, 4.) While Respondents distinguish this category of cases from "*Hurtado* cases," they note that both categories share the same authority for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*Id.* at 2.) Thus, the Court's statutory analysis above applies in this so-called "*Q. Li*" category of cases. Given that Section 1225(b)(2)(A) is inapplicable to Petitioners, the Court finds that Petitioners have been unlawfully detained in violation of the INA.

### B.  Petitioners' Detention Violates Due Process

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Petitioners. In this instance, Petitioners have a strong private interest in their personal liberty. The failure of the Government to afford them *any* individualized determination regarding whether they posed a danger or flight risk after living in this country for over four years with no criminal record poses a high risk of erroneous deprivation of their rights, while a bond hearing imposes minimal administrative burden. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior

to Petitioners' detention on May 22, 2026. Because that hearing did not occur, Petitioners should not now be in custody.

## IV.    CONCLUSION

For the aforementioned reasons, Petitioners' detention without a bond hearing offends the INA and the Due Process Clause of the Fifth Amendment. Therefore, this Court grants the Petition, orders Petitioners' immediate release, permanently enjoins the Government from re-detaining Petitioners under Section 1225(b)(2)(a), and temporarily enjoins the Government from re-detaining them under Section 1226(a) for seven days following his release. An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**